IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| WILLIAM ATKINS,<br><br>    Plaintiff,<br><br>    v.<br><br>THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, et al.,<br><br>    Defendants. | CIVIL ACTION FILE<br>NO. 1:25-CV-2912-TWT |

**OPINION AND ORDER**

This is an ERISA action. It is before the Court on Defendant Arch Capital Services LLC's ("Arch") Motion to Dismiss [Doc. 29]. For the reasons set forth below, Defendant Arch's Motion to Dismiss [Doc. 29] is GRANTED in part and DENIED in part.

**I.   Background**

Plaintiff William Atkins is the spouse of Shannon Atkins as well as the administrator of her estate. (Am. Compl. ¶ 17.) Before her death, Shannon Atkins was employed by Defendant Arch Capital Services LLC and enrolled in its life insurance coverage (the "Plan"). (*Id.* ¶¶ 8, 15.) She was enrolled in "Basic Employee Term Life Coverage" ("Basic Life") and "Optional Employee Term Life Coverage ("Optional Life"). (*Id.* ¶¶ 26–31.) As the employer sponsoring the employee benefit plan, Arch is the "plan administrator." (Am. Compl. ¶ 6 (citing 29 U.S.C. § 1002(16).) Defendant The Prudential Insurance Company of America ("Prudential") serves as the "claims administrator" for

the Plan, tasked with processing participants' individual claims for coverage. (*Id.* ¶ 10.) The decedent was diagnosed with ovarian cancer in 2020 and was forced to stop work due to her illness in December 2022. (*Id.* ¶¶ 35, 37.) At that time, the decedent applied for both short-term and long-term disability leave, which was approved. (*Id.* ¶¶ 38–41.) Arch formally terminated her employment in August 2024. (*Id.* ¶ 65.)

According to the Complaint, the decedent qualified for yet did not properly receive coverage under a "death benefit" clause. The Plan's "death benefit" clause waives life insurance premiums for employees who become "totally disabled"[1] for "one year after [the] Total Disability started." (*Id.* ¶ 42) The death benefit may then be extended "for successive one year periods" if the insured provides written proof of continued total disability to Prudential.[2] (*Id.*) The Complaint alleges that Arch and Prudential breached their fiduciary duties by "lull[ing]" the decedent into believing she was receiving the full benefit of her coverage. (*Id.* ¶ 61.) It specifically points to benefit statements and invoices that Arch issued to the decedent between the time she stopped working (December 2022) and the formal termination of her employment (August 2024). (*Id.* ¶¶ 56, 61.) It further points to Arch's failure to affirmatively

---

[1] The clause also requires Arch's employees to be less than sixty years of age when the total disability begins, which is the case for the decedent.

[2] The specific conditions are outlined in Section C of the Policy. (Am. Compl., Ex. 2, at 23–24 [Doc. 23-2].) The pagination of this exhibit reflects the PDF pagination.

advise the decedent about the death benefit despite the company having actual knowledge that she was totally disabled, would not return to work, and otherwise qualified for the protection. (*Id.* ¶¶ 48, 51, 55, 67.) The decedent allegedly would have submitted written proof if she had known about the requirement. (*Id.* ¶ 71.)

Additionally, the Complaint asserts that Arch breached its fiduciary duties by failing to correct inaccurate information provided by Prudential regarding the decedent's deadline to convert her employer-sponsored plan into an individual policy. (*Id.* ¶¶ 75–93.) As a result of the inaccurate information, Atkins did not convert the decedent's insurance coverage and could not continue receiving the death benefit for which the decedent was eligible. (*Id.* ¶ 94.)

Now, Atkins seeks compensation for unpaid insurance coverage. Count I is a benefits claim that seeks compensation under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). In the alternative, Count II seeks equitable relief against Prudential and Arch for breach of fiduciary duty under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). In the alternative to Counts I and II, Count III seeks compensatory damages against Arch for the common law claim of negligent misrepresentation.

## II.  Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts and even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp.*, 711 F.2d 989, 994–95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that, at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

III.  Discussion

A. ERISA Coverage Claim (Count I)

Atkins describes Arch's alleged fiduciary breach in two primary ways: (1) Arch did not correct a mistake on Prudential's conversion notice; and (2) it issued misleading statements and invoices to the decedent and failed to correct them or otherwise advise her about the death benefit clause. The Court walks through both arguments below before concluding that the dismissal of Atkins's claim for coverage under ERISA § 502(a)(1)(B), 29 U.S. § 1132(a)(1)(B), is inappropriate.

1. Prudential's Conversion Notice

The first question is whether Arch is a fiduciary with respect to the alleged conduct. "[A] person is a fiduciary . . . to the extent [ ] he exercises any discretionary authority or discretionary control respecting management of such plan." 29 U.S.C. § 1002(21)(A)(i). The key phrase is "to the extent," as Arch is a fiduciary only "to the extent" it exercised discretionary authority or control of the Plan. *See Local Union 2134, United Mine Workers of Am. v. Powhatan Fuel, Inc.*, 828 F.2d 710, 714 (11th Cir. 1987) (quoting *Leigh v. Engle*, 727 F.2d 113, 133 (7th Cir. 1984). In other words, "fiduciary status under ERISA is not an all-or-nothing concept, and a court must ask whether a person is a fiduciary with respect to the particular activity at issue." *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1277 (11th Cir. 2005) (quoting

*Coleman v. Nationwide Ins. Co.*, 969 F.2d 54, 61 (4th Cir. 1992)).

Here, Prudential issued a "conversion notice" to the decedent, notifying her that her coverage would end with the termination of her employment and that she had until September 7, 2024, to convert her coverage to an individual policy. (Am. Compl. ¶¶ 75–76.) Atkins missed this deadline. (*Id.* ¶ 87.) When he later spoke with a Prudential representative over the phone on September 18, 2024, to confirm whether it was still possible to convert the decedent's policy, the representative confirmed that it was not. (*Id.* ¶ 89–90.) Atkins alleges that the deadline listed on the conversion notice was incorrect, as it should have listed October 7, 2024. (*Id.* ¶¶ 76–79.) He further alleges that Arch was "aware" that the notice contained the incorrect deadline. (*Id.* ¶ 81.)

The Court holds that Arch cannot be held liable as an ERISA fiduciary for a mistake of this sort. Arch appointed Prudential as the claims administrator to process individual benefit claims, (*id.* ¶ 10), which includes the routine sending of conversion notices. As such, Arch is not automatically responsible for every mistake that Prudential may make in the course of processing claims; rather, as the delegating fiduciary, Arch bears a "duty to monitor appropriately" the delegated fiduciary. *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1465–66 (4th Cir. 1996) (citations omitted); *Leigh*, 727 F.2d at 135 (citing 29 U.S.C. §§ 1104(a)(1), 1105(a), 1105(c)). Atkins makes no allegations that Arch failed to appropriately monitor Prudential's claims

6

processing on the whole—other than identifying this single instance in which Prudential had set an incorrect deadline. That mistake is insufficient to implicate Arch's fiduciary duties. Therefore, Atkins may not base his breach of fiduciary duty claim against Arch on the allegedly incorrect conversion deadline. The Court next addresses whether such a duty passes muster based on Arch's statements and failure to affirmatively advise the decedent about the death benefit.

### 2. Arch's Statements and Failure to Advise

Arch issued written benefit statements and invoices to the decedent in the period between the start of her disability leave until Arch formally terminated her employment in August 2024. (Am. Compl. ¶¶ 65, 67.) The decedent paid those invoices. (*Id.* ¶57.) Atkins alleges that the continuation of these statements and invoices during this period misled the decedent into believing that she was receiving the full benefit of her coverage and that her coverage ended with the formal termination of her employment. (*Id.* ¶¶ 56, 68–69.) Atkins argues that Arch had a duty to correct its misrepresentations. (*Id.* ¶ 50.) Specifically, it should have advised her that the premiums could be waived under the death benefit clause beginning from the time of her total disability and continuing in successive one-year intervals (notwithstanding the termination of her employment in August 2024). (*Id.* ¶ 71.) Even if Arch's statements and invoices did not constitute misrepresentations, Atkins argues

7

that Arch nonetheless had a fiduciary duty to affirmatively advise the decedent about the death benefit. (*Id.* ¶¶ 72–73; Pl.'s Resp. Br. in Opp'n to Def.'s Mot. to Dismiss, at 12.) He points to the decedent's "special circumstances"—that Arch knew of her total disability and the importance to her of maintaining life insurance—to support such a duty. (*See* Pl.'s Resp. Br. in Opp'n to Def.'s Mot. to Dismiss, at 12.)

As an initial matter, the Court holds that Arch's benefit statements and invoices were not by themselves inaccurate or misleading. Arch issued routine and accurate benefit statements and invoices to the decedent in the period between the start of her disability leave and the formal termination of her employment. The Plan itself appears to authorize Arch to formally label an individual as "still employed and in the Covered Classes for the insurance during certain types of absences," such as disability leave. (*See* Am. Compl., Ex. 1, at 13 [Doc. 23-1].) The decedent remained formally employed with Arch until August 2024, and Arch issued its last benefit statement and invoice the prior month. (Am. Compl. ¶ 58.) Prudential then mailed a conversion notice to the decedent, informing her that her life insurance coverage ended due to the termination of her employment. (*Id.* ¶ 75.) While a plan administrator may be required to provide individualized treatment to affirmatively correct a misrepresentation it made, that is not the case here. Arch issued ordinary statements and invoices to the decedent that continued while she was still

8

employed and ended when her employment was terminated. These documents cannot be fairly characterized as misrepresenting the terms of the Plan or other material facts, and Arch otherwise appears to have complied with ERISA's basic notice requirements.

Notwithstanding the accuracy of Arch's statements and invoices, the Court holds that Atkins has plausibly alleged that Arch had a fiduciary duty to affirmatively advise the decedent of the death benefit clause due to her "special circumstances." While knowledge of a plan participant's illness does not create a blanket obligation on a plan administrator to inform the participant of specific coverage options for which they may qualify, a growing number of courts have recognized that certain circumstances trigger an affirmative duty to do so. "This new affirmative duty to disclose has only been imposed in special circumstances with a potentially extreme impact on a plan as a whole, where plan participants generally could be materially and negatively affected." *Perras v. Coca-Cola Co. of N. Am.*, 2020 WL 5551028, at \*6 (N.D. Ga. Jan. 24, 2020) (citation omitted).

These special circumstances include knowledge that the participant was terminally ill and/or totally disabled, would never return to work, and would benefit from material information about his or her coverage. *See, e.g., id.* at \*6–8; *Fed. Ins. Co. v. Am. Home Assurance Co.*, 102 F. Supp. 3d 1354, 1359 (N.D. Ga. 2015) ("[The plan administrator] had [ ] specific information about

9

[the insured] that put them on notice that he was not a garden-variety employee . . . . The company, instead, was aware of specific facts related to [his] circumstances which made the issue of conversion rights significant to him and [ ] invoked the company's fiduciary duties."); *Harris v. Life Ins. Co. of N. Am.*, 419 F. Supp. 3d 1169 (N.D. Cal. 2019) (finding an affirmative duty to inform the plan participant about the continuation of coverage on facts similar to the present case); *see also Vest v. Resolute Forest Prods. US, Inc.*, 2017 WL 6375964, at *4–5 (E.D. Tenn. Dec. 13, 2017) (finding no affirmative duty to notify in part because the plaintiff did not allege special circumstances such as the employer's knowledge of the insured's terminal illness and permanent inability to return to work).

Atkins has alleged these exact facts. (*See* Am. Compl. ¶¶ 51, 55, 67.) The Court is therefore persuaded at this stage to follow in the steps of these prior cases, which span multiple districts. Arch's Motion to Dismiss is hereby denied as to Count I in its entirety.

### B. ERISA Equitable Relief (Count II)

The Court dismisses Count II for equitable relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). The only injury that Atkins identifies in this count is the compensation for unpaid coverage, which is the same injury and for the same amount identified in his claim under ERISA § 502(a)(1)(B). ERISA § 502(a)(1)(B) already provides a remedy to plan beneficiaries for

10

claims for lost coverage, and ERISA § 502(a)(3) only provides a remedy when no such claim under § 502(a)(1)(B) is possible. *See Williamson v. Travelport, LP*, 953 F.3d 1278, 1297–99 (11th Cir. 2020) (holding that it is inappropriate to disguise a fiduciary duty claim as a § 502(a)(3) when it essentially seeks identical relief as a benefits claim under § 502(a)(1)(B)).

### C. Negligent Misrepresentation (Count III)

With few exceptions,[3] ERISA preempts "any and all State laws insofar as they may . . . relate to any employee benefit plan." 29 U.S.C. § 1144(a). This broad conflict preemption language establishes ERISA's "extraordinary pre-emptive power."[4] *Aetna v. Davila*, 542 U.S. 200, 209 (2004). "[A] state law relates to a benefit plan . . . if it has a connection with or reference to such a plan." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (citation modified). The state law need not be "specifically designed to affect employee benefit plans." *Id.* (citation omitted).

---

[3] None of which are relevant here. *See* 29 U.S.C. § 1144(b).

[4] The Court notes that two types of preemption exist with respect to ERISA: (1) conflict preemption (also known as defensive preemption) pursuant to 29 U.S.C. § 1144(a), which can be raised as an affirmative defense to state law claims, and (2) complete preemption (also known as super preemption), which can be raised to divest a federal court of subject-matter jurisdiction. *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1211–12 (11th Cir. 1999). Only conflict preemption is relevant here, but the Court relies on some case law related to complete preemption because the test for each is related— as any completely preempted claim is also conflict preempted. *Id.* at 1215.

The Court holds that Atkins's negligent misrepresentation claim "relates to" the Plan and is therefore preempted by ERISA. Atkins could have brought (and in fact did bring) a claim under ERISA § 502(a) for the same conduct underlying the negligent misrepresentation claim. Both claims concern alleged misrepresentations regarding the extent and timing of the decedent's coverage. Courts routinely agree that ERISA preempts claims based on conduct of this sort—those brought by a plan participant or beneficiary in the pursuit of lost coverage as damages. *See, e.g.*, *Morris v. Gen. Motors Corp.*, 2004 WL 3177943, at *3–4 (N.D. Ga. Sept. 30, 2004) (holding that ERISA preempts a plan participant's state law claim for negligent misrepresentation); *see also Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1469–70 (11th Cir. 1986) (holding that ERISA preempts a plan participant's state law claim for fraudulent omission). It does not matter that Atkins's tort claim may seek remedies different than those afforded under ERISA. *Davila*, 542 U.S. at 215 ("The limited remedies available under ERISA are an inherent part of the "careful balancing" between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans."). Moreover, it is clear that Atkins's negligent misrepresentation claim "implicate[s] legal duties dependent on the interpretation of an ERISA plan." *Ehlen Floor Covering, Inc. v. Lamb*, 660 F.3d 1283, 1288 (11th Cir. 2011). Determining whether Arch's benefit statements and communications misrepresented facts

12

regarding coverage would require assessing the requirements of the Plan.

Lastly, Atkins's reliance on *Cotton v. Massachusetts Mutual Life Insurance Co.*, 402 F.3d 1267 (11th Cir. 2005), is misplaced. In *Cotton*, the plaintiffs' negligent misrepresentation claim survived because it was pleaded against an insurer for its conduct in selling insurance coverage (prior to the execution of a policy) rather than in administering an ERISA plan. *Id.* at 1283. Here, by contrast, Atkins alleges that Arch negligently misrepresented facts regarding an established plan as its administrator and fiduciary. (*See* Am. Compl. ¶¶ 138–39.) The Court therefore dismisses Count III.

## IV.   Conclusion

For the reasons set forth above, Defendant Arch Capital Services LLC's Motion to Dismiss [Doc. 29] is GRANTED in part and DENIED in part. The Motion is granted as to Counts II and III but denied as to Count I.

SO ORDERED, this ___12th___ day of January, 2026.

*[signature]*
THOMAS W. THRASH, JR.
United States District Judge